# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DANIELS SHARPSMART, INC.,** | 1:17-cv-403-LJO-SAB |
| **Plaintiff,** | |
| v. | **MEMORANDUM DECISION AND ORDER RE PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION (Doc. 11) AND DEFENDANTS' MOTION TO DISMISS (Doc. 12)** |
| **KAREN SMITH, in her official capacity as Director of the California Department of Public Health, et al.,** | |
| **Defendants.** | |

## I. INTRODUCTION

Plaintiff Daniels Sharpsmart, Inc. ("Daniels") brings this case under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201, 2202, alleging, among other things, that Defendants[1] violated the Commerce Clause of the United States Constitution, art. I, § 8, clause 3, through their extraterritorial enforcement of California's Medical Waste Management Act ("the MWMA"), Cal. Health & Safety Code §§ 117600 et seq. Daniels now seeks a preliminary injunction to enjoin Defendants' allegedly unlawful enforcement of the MWMA. Doc. 11. Defendants move to dismiss on a number of grounds. Doc. 12.

For the following reasons, Defendants' motion to dismiss is DENIED, and Daniels's motion for a preliminary injunction is GRANTED.

---

[1] Defendants are Karen Smith, who is sued in her official capacity as Director of the California Department of Public Health ("the Department"); Ronald Pilorin, who is sued in his personal capacity as Chief of the Department's Emergency, Restoration, and Waste Management Section; Alison Dabney, who is sued in her personal capacity is the Chief Senior Environmental Scientist for the Department's Medical Waste Management Program; Ginger Hilton, who is an Environmental Scientist for the Department's Medical Waste Management Program. Doc. 1, Complaint ("Compl.") ¶¶ 4-7. Daniels does not indicate in what capacity (or capacities) Hilton is sued. *Id.* ¶ 7.

1

## II. FACTUAL AND PROCEDURAL HISTORY

The facts of this case are few, straightforward, and undisputed. Daniels provides services for the transport and treatment of biohazardous medical waste. Doc. 1, Complaint ("Compl."), ¶ 8. The MWMA requires, among other things, that medical waste generated in California must be treated by either incineration at a permitted facility or by another means approved by the California Department of Public Health ("the Department"). *Id.* ¶ 9. Because there were no facilities in California that complied with the MWMA, "Daniels transported its biohazardous medical wastes for treatment at facilities outside of California," including at facilities in Kentucky and Indiana. *Id.* ¶¶ 10-14. "Nothing in the MWMA indicates that its incineration requirement was intended to apply to waste treated outside of California." *Id.* ¶ 9.

In November 2014, the Department inspected Daniels's Fresno facility and, shortly afterward, Hilton sent a letter, copying Dabney, stating that Daniels had violated the MWMA (specifically, Cal. Health and Safety Code §§ 118215(a) and 118222) by treating its waste in Indiana and Kentucky facilities that used disposal methods that the MWMA did not authorize, that is, by means other than incineration. *Id.* ¶ 11; Doc. 11-2, Declaration of Daniel Kennedy ("Kennedy Decl."), ¶¶ 27-28. The letter further stated that Daniels was in "noncompliance" with California law. *Id.* ¶ 19. "Daniels responded that the Department could not dictate the method of waste treatment outside of California. Defendant Dabney stated her disagreement in an email to Daniels copied to Defendant Hilton." Compl. ¶ 12; Kennedy Decl. ¶ 18.

In April 2015, the Department performed another inspection of Daniels's Fresno facility. *Id.* ¶ 13. Shortly afterward, Hilton sent another letter, copying Dabney, stating that Daniels use of facilities in Indiana and Kentucky that disposed its waste by means other than incineration violated the MWMA. *Id.* ¶ 13; Kennedy Decl. ¶ 20; Doc. 11-6 at 5 (Hilton letter stating "[n]one of [Daniels's] waste shipped to Indiana was treated in compliance with California law"); *id.* (Hilton letter stating waste transported to other states "cannot be treated by steam sterilization or microwave technology" under Cal. Health &

Safety Code § 118222).

In August 2015, the Department issued a "Notice of Violation" ("NOV") to Daniels, signed by Pilorin. Compl. ¶ 14; Kennedy Decl. ¶ 21. "The NOV imposed a $567,000 penalty against Daniels for using methods other than incineration to treat biohazardous medical wastes outside of California." Compl. ¶ 14; Kennedy Decl. ¶ 21; *see also* Doc. 11-7 at 11-12 (NOV stating fine was imposed, in part, because Daniels used facilities in Kentucky and Indiana without "incineration treatment units" in violation of the MWMA on 567 occasions). Daniels appealed the penalty with the Department's Office of Administrative Hearings and Appeals ("OAHA"). Compl. ¶ 19; *see also* Doc. 19 at 13 n.4. To avoid further penalties, however, Daniels now transports its medical wastes to incinerators at other states, "at a significantly higher cost." Compl. ¶ 15.

In response to Defendants' actions, Daniels brought this case. Daniels asserts two causes of action against Defendants. The first claim, brought under § 1983, asserts that Defendants violated the Commerce Clause. *Id*. at 5. Daniels alleges "nothing in the MWMA indicates that its incineration requirement was intended to apply to waste treated outside of California," and asserts that Defendants' applying the requirement to Daniels's out-of-state impermissibly regulates "commerce occurring wholly outside the borders of California." *Id.* ¶ 18.[2] The claim seeks an injunction against Smith, in her official capacity as Director of the Department, enjoining the Department from using or threatening to use the MWMA to force Daniels to incinerate its waste transported to out-of-state facilities, and requests monetary damages from Hilton, Dabney, and Pilorin, who are sued in their personal capacities. *Id.* ¶¶ 16-26.[3]

---

[2] Daniels also argues Defendants' extraterritorial application of the MWMA violates the balancing test established in *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970). *See* Doc. 11-1 at 17. Because the Court concludes Defendants violated the extraterritorial doctrine, the Court need not address this alternative argument.

[3] Though Defendants do not raise the issue, the Court notes that Daniels is entitled to bring a dormant Commerce Clause claim under § 1983 against Defendants in their individual capacities. *See Dennis v. Higgins*, 498 U.S. 439 (1991); *Starlight Sugar, Inc. v. Soto*, 253 F.3d 137, 142 (1st Cir. 2001); *Clajon Prod. Corp. v. Petera*, 70 F.3d 1566, 1571 n.11 (10th Cir. 1995).

Daniels's second claim, brought under 28 U.S.C. §§ 2201 and 2202 and asserted against Smith only, seeks a judicial declaration that "Smith may not enforce California's Medical Waste Management Act (specially including those provisions requiring incineration of certain medical waste) with respect to wastes treated outside of California." *Id.* ¶ 31. Plaintiff now moves for a preliminary injunction that would enjoin "the Department from compelling Daniels to incinerate the medical wastes it transports outside of California." Doc. 11-1 at 20.[4]

The OAHA proceedings remain pending. *See* Doc. 12-3, Exs. B and C. On March 17, 2017, three days before filing this case, Daniels moved for judgment in the OAHA proceedings. In doing so, Daniels argued that (1) the MWMA does not require or permit extraterritorial application and (2) even if it did, Defendants' applying the MWMA to Daniels's waste that was disposed in other states violates the dormant Commerce Clause. *See* Doc. 12-3 at 22. Daniels seeks only "judgment on the merits in favor of Daniels and against the Department." *Id.* at 31.

Defendants move to dismiss on the grounds that (1) the Court lacks jurisdiction because this case does not present a federal question; (2) Daniels fails to state a claim; (3) Defendants have qualified immunity from Daniels's claims; and (4) the Court should abstain from considering Daniels's claims under the *Younger*[5], *Burford*[6], *Pullman*[7], and *Colorado River*[8] abstention doctrines. *See* Doc. 12-2 at 2. Daniels opposes on all grounds.

---

[4] Though Daniels's complaint is not entirely clear as to whether its Commerce Clause challenge is a facial or as-applied one, it clarifies in its opposition that it is an as-applied challenge. *See* Doc. 18 at 12. An "as-applied" challenge is where the plaintiff argues the law is unconstitutional as applied to the plaintiff's particular circumstances. *See Pharma Res. & Mfrs. of Am. V. District of Columbia*, 406 F. Supp. 2d 56, 70 (D.D.C. 2005) (holding law as applied to plaintiffs violated extraterritorial doctrine).

[5] *Younger v. Harris*, 401 U.S. 37 (1971).

[6] *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

[7] *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 (1941).

[8] *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800 (1976).

## III. STANDARDS OF DECISION

**A. Rule 12(b)(6)**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must, in accordance with Rule 8, allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "[T]o be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In practice, "a complaint . . . must contain either direct or inferential allegations respecting

all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562.

**B. Preliminary injunction**

To secure injunctive relief prior to a full adjudication on the merits, a plaintiff must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. The Ninth Circuit follows a "sliding scale" approach to preliminary injunctions. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.* at 1131-32. For example, if the moving party is unable to establish a likelihood of success on the merits, preliminary injunctive relief may still proper if the party can show that (1) there are at least "serious questions" going to the merits; (2) the balance of the hardships tips "sharply" in its favor; and (3) the other factors listed in *Winter* (*i.e.*, irreparable harm and in the public interest) are satisfied. *Id.* at 1135.

## IV. DISCUSSION

The Court first addresses Defendants' motion to dismiss because it challenges the Court's jurisdiction and, if granted, would moot Daniels's preliminary injunction motion.[9]

**A. The Court has jurisdiction**

As a preliminary matter, Defendants argue Daniels's complaint does not raise a federal question—the only basis for the Court's jurisdiction—because it "really seeks a determination of

---

[9] The Court discusses Defendants' motion to dismiss on the ground that Daniels has failed to state a claim below in the merits section of Daniels's preliminary injunction motion.

6

whether the MWMA incineration requirement was intended by the legislature to apply to waste treated outside of California," which will require the Court "to rely exclusively on state law." Doc. 12-2 at 16.

Frankly, this argument makes no sense. Daniels's first cause of action, brought under § 1983, a federal statute, alleges that Defendants violated the Commerce Clause, and seeks a judicial determination as to whether Defendants did, in fact, violate the Clause. Daniels alleges Defendants, who are California officials, attempted to enforce the MWMA against Daniels for conduct that occurred entirely outside of California. It is difficult to conceive how this does not raise a federal question. The Court has federal question jurisdiction over this case.

**B. The Court should not abstain from deciding this case**

    **1.** *Younger* **abstention**

"*Younger* [abstention] is an exception to the usual rule that federal courts should exercise the jurisdiction conferred on them by statute." *Gartrell Constr., Inc. v. Aubry*, 940 F.2d 437, 441 (9th Cir. 1991). A guiding principle underlying the doctrine is "comity, that is, a proper respect for state functions" by the federal courts. *Younger*, 401 U.S. at 44. The doctrine thus applies when "(1) there are ongoing state judicial proceedings, (2) the proceedings implicate important state interests, and (3) there is an adequate opportunity in the state proceedings to raise federal questions." *Id.*

Daniels challenges only whether the second factor is present here. *See* Doc. 18 at 15. Daniels acknowledges that the OAHA administrative proceedings may implicate California's exercise of its valid police powers and that this generally would be sufficient for *Younger* abstention, *see* Doc. 18 at 15, but argues that the State's interest must yield to the overriding federal interests inherent in cases, such as this one, alleging a Commerce Clause violation. *See id.*

Daniels relies heavily on the Fourth Circuit's decision *Harper v. Pub. Serv. Comm'n of W.Va.*, 396 F.3d 348, 356-57 (4th Cir. 2005), in which the court held that a state's interests underpinning a state statute, however valid, can "seldom" outweigh the federal government's interests if the statute violates the Commerce Clause for purposes of *Younger* abstention. The court reasoned:

7

> The commerce power plays a role in abstention analysis quite different from many of the other provisions of the Constitution. The dormant Commerce Clause demonstrates a difference of kind, not merely of degree. By its very nature, it implicates interstate interests. It protects all states by ensuring that no state erects the kind of barriers to trade and economic activity that threatened the survival of a fledgling country under the Articles of Confederation. Recognizing that there is a peculiarly national interest—and therefore, more limited state interest—in no way threatens the kind of comity that has always underpinned the Younger doctrine. No state's dignity could be offended by acknowledging the obvious point that the Framers consciously withdrew interstate commerce from the vast collection of interests that remain the primary responsibility of the states.

*Id.* at 355-56. Simply put, regulating interstate commerce is exclusively the province of the federal government, so the principle of comity, "so central to the [*Younger*] abstention doctrine, is not strained when a federal court cuts off state proceedings that entrench upon the federal domain." *Id.* at 356 (citations and quotation marks omitted). "[T]here is no basis for invoking *Younger*" when a state seeks "to regulate activities that clearly are under federal control," such as interstate commerce. *Midwestern Gas Transmission Co. v. McCarty*, 270 F.3d 536, 539 (7th Cir. 2001). It would make no sense, as a matter of logic or comity, for a federal court to abstain from preventing state proceedings that are premised on a state law that violates controlling federal law. *See Gartrell*, 940 F.3d at 441 (holding *Younger* abstention inappropriate in federal-court case finding a state statute was preempted by federal law because "[n]o significant state interest is served where the state law is preempted"); *Stroman Realty, Inc. v. Martinez*, 505 F.3d 658, 667 (7th Cir. 2007) ("[A] state has no basis for invoking *Younger* if it seeks to enforce an invalid interest, such as the regulation of activities under exclusive federal control"). A state simply has no legitimate interest in advancing and enforcing its laws if doing so violates controlling federal law. *See McCarty*, 270 F.3d at 539 ("Mere defiance of clear federal law removing an area from potential state regulation is not such an interest.").

As discussed below, the Court finds that Daniels is likely to succeed on the merits of its claim that Defendants' application of the MWMA to its disposal of medical waste in Indiana and Kentucky

violated the Commerce Clause.[10] Consequently, the Court finds that *Younger* abstention is inappropriate here because California has no valid or important interest in enforcing a law that violates the Commerce Clause by regulating out-of-state commerce, whereas there is a significant federal interest in ensuring states do not encroach on the federal government's exclusive responsibility of regulating interstate commerce. *See Gatrell*, 940 F.2d at 441; *Harper*, 396 F.3d at 355-56.

### 2. *Burford* abstention

Defendants also contend *Burford* abstention is appropriate here. Under that doctrine, federal courts vested with jurisdiction may nonetheless "decline to rule on an essentially local issue arising out of a complicated state regulatory scheme." *Knudsen Corp. v. Nevada State Dairy Comm'n*, 676 F.2d 374, 376 (9th Cir. 1982) (citations omitted). The doctrine applies when:

> first, that the state has chosen to concentrate suits challenging the actions of the agency involved in a particular court; second, that federal issues could not be separated easily from complex state law issues with respect to which state courts might have special competence; and third, that federal review might disrupt state efforts to establish a coherent policy.

*Id.* at 377.

This case turns on one issue: whether Defendants applied the MWMA extraterritorially in violation of the Commerce Clause. The issue involves only "a vital *federal* question," and will not require the Court "to pass on 'any difficult questions of state law.'" *Harper*, 396 F.3d at 358 (emphasis in original). *Burford* abstention is therefore inappropriate here. *See id.*; *see also United States v. Morros*, 268 F.3d 695, 705 (9th Cir. 2001) (holding *Burford* abstention did not apply because case it involved whether a state law was preempted by federal law and therefore did not "resolve around 'complex state law issues'" and was "plainly not an issue 'with respect to which state courts might have special competence'").

### 3. *Pullman* abstention

---

[10] In fact, the Court ultimately concludes that

9

Defendants next argue that *Pullman* abstention applies here. *Pullman* abstention is appropriate only when: "(1) the federal plaintiff's complaint must require resolution of a sensitive question of federal constitutional law; (2) that question must be susceptible to being mooted or narrowed by a definitive ruling on state law issues; and (3) the possibly determinative state law must be unclear." *Morros*, 268 F.3d at 703-04. The doctrine is an "extraordinary and narrow exception" to the Court's jurisdiction, and "should rarely be applied." *Porter v. Jones*, 319 F.3d 483, 492 (9th Cir. 2003).

The first and second factors are not satisfied here. First, this case does not involve "a sensitive question of federal constitutional law." Questions of that sort "touch on a sensitive area of social policy," *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 802 (9th Cir. 2001), such as land use planning, landlord-tenant relationships, foreclosure policy, and death penalty procedures.[11] The Court cannot locate—and Defendants do not provide—any authority that suggests this relatively straightforward Commerce Clause challenge would qualify as "a sensitive area of social policy." *Pullman* abstention is inappropriate on this ground alone.

Second, as noted above, this case is premised on one issue of federal law: whether Defendants violated the Commerce Clause as applied to Daniels. Defendants suggest that, if the state courts ultimately determine that the MWMA does not apply extraterritorially, then Daniels's Commerce Clause claim may be mooted or its posture would change materially, which counsels in favor of abstaining under *Colorado River*. The Court disagrees. Even if the ALJ concludes that the MWMA does not apply extraterritorially, that has no bearing on the fact that Defendants enforced it against Daniels in an extraterritorial manner, which caused Daniels to incur substantial costs in order to comply with Defendants' interpretation of the MWMA. And even if the ALJ concludes that the MWMA *does* apply extraterritorially, and thus Defendants lawfully applied it under California law, that also has no bearing

---

[11] *See, e.g.*, *Columbia Basin*, 268 F.3d at 802 (land use); *1049 Market Street LLC v. City & Cty. of San Francisco*, No. C 15-2075 JSW, 2015 WL 5676019, at *3 (N.D. Cal. Sept. 28, 2015) (landlord-tenant relationships); *Elliott v. JPMorgan Chase Bank, N.A.*, No. 3:11-cv-826-RCJ-VPC, 2012 WL 1682039, at *3 (D. Nev. May 11, 2012) (foreclosure); *Brown v. Vail*, 623 F. Supp. 2d 1241 (death penalty by lethal injection procedure).

10

on whether its extraterritorially application violates federal law. Any state-law determinations in the OAHA proceedings will have no effect on the resolution of that issue. Accordingly, *Pullman* abstention is not appropriate here.

### 4. *Colorado River* abstention

The final abstention doctrine Defendants invoke is *Colorado River*. The doctrine is employed "[o]nly in rare cases" when "'the presence of a concurrent state proceeding' permit the district court to dismiss [or stay] a concurrent federal suit 'for reasons wise judicial administration.'" *R.R. Street & Co., Inc. v. Transport Ins. Co.*, 656 F.3d 966, 977-78 (9th Cir. 2011) (quoting *Colorado River*, 424 U.S. at 818).

The Ninth Circuit has "recognized eight factors for assessing the appropriateness of a *Colorado River* stay or dismissal," but Defendants seemingly argue only two are present here: (1) the desire to avoid piecemeal litigation—the Supreme Court's "chief concern" in *Colorado River* itself, *Morros*, 268 F.3d at 706—and (2) whether the state court proceedings will resolve all issues before the federal court. *Id.*; Doc. 19 at 18. Defendants argue these two factors are present because the OAHA proceedings involve "identical issues, arguments, and parties," and Daniels has argued in those proceedings that Defendants violated the Commerce Clause for the same reasons as it argues in this case. Doc. 19 at 18.

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988). The concern over piecemeal litigation is not present when, as here, neither forum has made any rulings. *See Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (1990). More importantly, simply because a state proceeding may consider the same federal issue raised in a concurrent federal proceeding does not mean that the federal forum should defer to the state forum. *See Morros*, 268 F.3d at 706. As the Ninth Circuit explained in *Morros*:

> *Colorado River* stands for the proposition that when Congress has passed a law expressing a preference for unified state adjudication, courts should respect that preference. . . . [T]he avoidance of piecemeal litigation factor is met . . . *only when* there

11

is evidence of a strong federal policy that all claims should be tried in the state courts.

*Id.* at 706-07 (emphasis added) (citation and quotation marks omitted).

No such federal policy exists here. This case is premised on Daniels's claim, brought under a federal statute, that Defendants violated the Commerce Clause, a provision of the federal constitution. As in *Morros*, this is "a federal law case that the state seeks to have adjudicated in state court." *Id.* at 707 (denying *Colorado River* abstention when state and federal proceedings turned on whether federal law preempted state law). Consequently, "*Colorado River* abstention has no applicability here." *Id.*

Although the Court could decline to apply *Colorado River* abstention on that ground alone, the Court also concludes that the second basis for applying the doctrine that Defendants advance—that the OAHA proceedings will resolve all the issues presented in this case—is not present here. *Colorado River* abstention is inappropriate if there is "substantial doubt" that the state-court proceedings will not lead to a "complete and prompt resolution of the issues between the parties." *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 28 (1983). This means that, when *Colorado River* abstention applies, "the federal court will have nothing further to do in resolving any substantive part of the case" after the state-court proceedings conclude. *Id.* If there is "substantial doubt" that this would not occur, *Colorado River* abstention is inappropriate. *Id.*

There is substantial doubt that the OAHA proceedings will resolve everything between the parties for at least two reasons. First, in the OAHA proceedings, Daniels seeks only judgment on the merits[12], whereas in this case it seeks damages, declaratory relief, and injunctive relief. Second, and more importantly, it is not certain that the OAHA proceedings will resolve the Commerce Clause issue. Daniels only raises it as a secondary, alternative argument that need not be addressed if the Administrative Law Judge ("ALJ") in the OAHA proceedings concludes that the MWMA does not

---

[12] Though the parties do not address what, exactly, this would entail, it presumably means that the NOV and associated fine would be voided if Daniels prevails. There is no indication that Daniels seeks any other relief. Further, Daniels represents that it "cannot recover damages in the [OAHA] action." Doc. 20 at 8.

12

apply extraterritorially. Thus—as Defendants explicitly point out—it is entirely possible that the OAHA proceedings will be resolved without the Commerce Clause issue being decided. *See* Doc. 12-2 at 20 (noting that if the state courts determine the MWMA does not apply extraterritorially, "then the Commerce Clause issue never arises").

Finally, as a general matter, "the same factors which weigh in favor of *Colorado River* abstention are of little weight where the pending federal proceeding is a § 1983 cause of action." *Martinez v. Newport Beach City*, 125 F.3d 777, 785 (9th Cir. 1997), *overruled on other grounds by Green v. City of Tucson*, 255 F.3d 1086 (9th Cir. 2001) (en banc). And regardless of whether those factors are present, the Court's obligation to exercise jurisdiction over § 1983 claims is "particularly weighty" given their nature. *Tovar v. Billmeyer*, 609 F.2d 1291, 1293 (9th Cir. 1979); *see also Pue v. Sillas*, 632 F.2d 74, 77 n.4 (9th Cir. 1980) ("abstention under [*Colorado River*] is especially undesirable when a federal hearing is sought on a section 1983 claim"). Against this backdrop, Defendants' already minimal arguments in favor of *Colorado River* abstention are even less persuasive. Accordingly, the Court declines to apply *Colorado River* abstention here.

The Court therefore DENIES Defendants' motion to dismiss in its entirety.

**D. Daniels is entitled to a preliminary injunction**

  **1. Daniels is likely to succeed on the merits of his Commerce Clause challenge**

    **a. Daniels states a claim against Defendants**

Defendants argue Daniels's Commerce Clause claim fails as a matter of law because Defendants' conduct was a "legitimate exercise of state police power" and, in any event, Daniels fails to plead sufficient facts concerning "the misconduct claimed" with regard to Smith. *See* Doc. 12-2 at 2; *id.* at 23-27. Specifically, Defendants argue that Daniels fails to allege any facts "alleg[ing] unlawful conduct committed by defendant Smith with respect to federal Commerce Clause law." *Id.* at 23.

As Daniels correctly points out, Smith is being sued in only her official capacity as Director of the Department and, accordingly, the claims against her are appropriately treated as against California

13

and its enactment and enforcement of the MWMA. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("'Suits against state officials in their official capacity . . . should be treated as suits against the State.'"). Consequently, Daniels need not allege specific facts about Smith's involvement (if any) with the events underlying this case.

DThe Court recently summarized the extraterritorial doctrine as follows:

> "The Commerce Clause of the United States Constitution assigns to Congress the authority '[t]o regulate Commerce with foreign Nations, and among the several States.'" *Sam Francis Foundation v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015) (quoting U.S. Const. art. I, § 8, cl. 3). "Generally speaking, the Commerce Clause protects against inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State." *Healy*, 491 U.S. at 336.
>
> "Courts have long read a negative implication into the clause, termed the 'dormant Commerce Clause,' that prohibits states from discriminating against interstate commerce." *Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 731 F.3d 843, 846 (9th Cir. 2013). The doctrine "bars state regulations that unduly burden interstate commerce." *Quill Corp. v. North Dakota*, 504 U.S. 298, 312 (1992) (citation omitted). "[A] statute violates the dormant Commerce Clause per se when it directly regulates interstate commerce." *Pharm. Research and Mfrs. of America v. Cty. of Alameda*, 768 F.3d 1037, 1043 (9th Cir. 2014) (quoting *Assoc. des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 949 (9th Cir. 2013)) (internal quotation marks omitted). "Direct regulation occurs when a state law directly affects transactions that take place across state lines or entirely outside of the state's borders." *Id.* (quoting *S.D. Myers, Inc. v. City and Cty. of S.F.*, 253 F.3d 461, 467 (9th Cir.2001)) (internal quotation marks omitted).
>
> Under the extraterritoriality doctrine, any "statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature," *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1101 (9th Cir. 2013) ("*RMFU*") (quoting *Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989)), and regardless of "whether or not the commerce has effects within the State." *Healy*, 491 U.S. at 336. To determine whether state legislation violates the dormant Commerce Clause, "[t]he critical inquiry is whether the practical effect of the [legislation] is to control conduct beyond the boundaries of the State." *Id.*

*Publius v. Boyer-Vine*, __ F. Supp. 3d __, 2017 WL 772146, at \*17-18 (E.D. Cal. 2017).

Daniels's claim that Defendants violated the extraterritorial doctrine is straightforward. Daniels alleges—and Defendants do not dispute—that it transported medical waste from California to Indiana and Kentucky and disposed of the waste in accordance with the laws of those states by means other than

14

incineration. Defendants found that this violated the MWMA, which they contend mandates that all waste generated in California be disposed of by incineration, regardless of whether it is transported to another state and regardless of whether that state permits disposal by means other than incineration.

The case presents a clear violation of the extraterritorial doctrine that requires little analysis. Daniels lawfully used facilities in other states to dispose of its waste, yet Defendants asserted this was impermissible for no reason other than doing so allegedly violated the MWMA, a California statute. Because Daniels purportedly violated the MWMA, the Department imposed a substantial penalty. In an effort to avoid any further penalty, Daniels stopped using out-of-state facilities that would, according to Defendants, violate the MWMA and instead used other out-of-state facilities that are MWMA-compliant, which caused Daniels's costs to increase significantly. This is a blatant "application of a [California] state statute to commerce that takes place wholly outside of [California's] borders." *Edgar v. MITE Corp.*, 457 U.S. 624, 642-43 (1982) (plurality opinion). By subjecting Daniels to a fine if it does not use MWMA-compliant facilities in other states, Defendants have impermissibly "project[ed] [California's] legislation into other states . . . and directly regulated commerce therein." *Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 583 (1986). The Commerce Clause prohibits Defendants from "impos[ing] economic sanctions on violators of its laws with the intent of changing the tortfeasors' lawful conduct in other States," which is precisely what Defendants attempted to do here. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 572 (1996).

Critically, in their moving papers and opposition to Daniels's motion, Defendants do not even attempt to dispute that they applied the MWMA extraterritorially to Daniels, nor do they address Daniels's argument that their doing so violates the extraterritorial doctrine. Instead, they only argue the MWMA represents a legitimate exercise of California's police powers, the statute does not discriminate against interstate commerce, its effects on incidental interstate commerce, if any, are marginal, and Daniels failed to comply with its permit. *See, e.g.*, Doc. 19 at 18-24; Doc. 12-2 at 2. Even assuming Defendants are correct on all counts, these arguments are irrelevant to Daniels's claim that Defendants

15

violated the extraterritoriality doctrine. In fact, Defendants' only mention of extraterritoriality is in the context of acknowledging that the OAHA proceedings will address whether the MWMA applies extraterritorially. Simply put, Defendants essentially ignored (or completely misunderstood) Daniels's argument that they applied the MWMA extraterritorially to Daniels when they fined Daniels for using other states' waste disposal facilities to dispose of waste by means other than incineration in apparent violation of the MWMA. As Daniels puts it, "[i]nstead of addressing the extraterritoriality doctrine, [Defendants] go[] off on tangents." Doc. 20 at 2.[13]

The Court easily concludes that Defendants' conduct toward Daniels violated the extraterritoriality doctrine. Because the Commerce Clause confers a right to Daniels to engage in interstate commerce, *see Higgins*, 498 U.S. at 448, and Defendants violated that right, the Court finds Daniels has stated a valid Commerce Clause claim against Defendants. *See id.*; *Starlight Sugar*, 253 F.3d at 142.

### b. Defendants are not entitled to qualified immunity

Because the Court concludes Daniels has stated a valid claim against Defendants, Daniels is likely to succeed on the merits unless Defendants are entitled to qualified immunity—the only defense to the claim Defendants raise. "Qualified immunity . . . shields § 1983 defendants '[f]rom liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (alteration in original)). "In determining whether an officer is entitled to qualified immunity, [the Court] consider[s] (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Lal v. California*, 746 F.3d 1112, 1116 (9th

---

[13] Defendants do address the extraterritorial doctrine in their reply in support of their motion to dismiss. Doc. 21 at 8-10. Their discussion of the doctrine, however, is misguided and fails entirely to account for the fact that they enforced the MWMA (*i.e.*, fined Daniels) solely on the basis that Daniels conducted business in other states that purportedly violated the MWMA. In other words, their brief argument that their conduct did not violate the extraterritorial doctrine is unpersuasive.

16

Cir. 2014).

The Court concludes Defendants are not entitled to qualified immunity from Daniels's claims. First, because Smith is sued in her official capacity only, qualified immunity is not available to her. *See Community House, Inc. v. City of Boise, Id.*, 623 F.3d 945, 965 (9th Cir. 2010) (holding qualified immunity "is *not* available to those sued only in their official capacities") (emphasis in original).

As to the remaining Defendants, because the Court concludes Daniels has stated a claim that Defendants violated Daniels's constitutional rights under the Commerce Clause, they are entitled to qualified immunity only if that constitutional right was not clearly established at the time of their conduct in 2014. *See Abbey*, 263 F.3d at 1074. A constitutional right is clearly established when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The extraterritoriality doctrine has been clearly established for decades. In 1982, the Supreme Court clearly recognized the doctrine when it unequivocally held that the Commerce Clause . . . precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." *MITE Corp.*, 457 U.S. at 642. The Court reaffirmed and expounded on the doctrine in 1989 in *Healy*, 491 U.S. at 336. And in 1991, the Court, reviewing its century-old precedent, observed that it "has often described the Commerce Clause as conferring a 'right' to engage in interstate trade free from restrictive state legislation," and explicitly held that the Commerce Clause confers a constitutional right to engage in interstate commerce that may be violated and redressed under § 1983. *Higgins*, 498 U.S. at 450; *Starlight Sugar*, 253 F.3d at 142 ("We agree with the district court that Starlight/PanAm have identified a deprivation of this constitutional right[to engage in interstate commerce]"). Accordingly, the Court concludes Daniels had a clearly established constitutional right to engage in interstate commerce that Defendants violated. Defendants therefore are not entitled to qualified immunity.

**2. Remaining preliminary injunction factors**

Because the Court finds that Defendants' violation of the Commerce Clause was blatant and essentially conceded, the Court also finds Daniels has made a strong showing that it is likely to succeed on the merits. Accordingly, Daniels may obtain injunctive relief even if its showings on the remaining injunction factors are weaker. *See Cottrell*, 632 F.3d at 1131-32.

Daniels, however, has made a strong showing on all three of the remaining factors. As to whether it will suffer irreparable injury in the absence of preliminary relief, the apparent constitutional violation of its constitutional rights that Daniels has suffered and will continue to suffer in the absence of an injunction, coupled with the substantial costs it has incurred and will continue to incur in order to comply with Defendants' interpretation of the MWMA, constitutes sufficient irreparable harm. *See Goldie's Bookstore v. Superior Ct.*, 739 F.2d 466, 472 (9th Cir.1984) ("An alleged constitutional infringement will often alone constitute irreparable harm."); *Am. Trucking Assocs., Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009) ("[T]he constitutional violation alone, coupled with the damages incurred, can suffice to show irreparable harm."); *see also ACLU v. Johnson*, 194 F.3d 1149, 1163 (10th Cir. 1999) ("[D]eprivation of the rights guaranteed under the Commerce Clause constitutes irreparable injury.") (citation omitted).[14]

An injunction is in the public interest and the equities tip in Daniels's favor. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). Conversely, Defendants have no legitimate interest in enforcing a state law in an unconstitutional manner, particularly given that any disposal methods California has deemed insufficient will be employed entirely in other states and will have no material effect on the State.

---

[14] Defendants argue Daniels has not and will not suffer an irreparable injury because it waited over a 1.5 years to file this case after the NOV issued and waited almost nine months after filing to move for a preliminary injunction. *See* Doc. 19 at 28. As noted above, it appears that the violation of a constitutional right is sufficient, without more, to establish irreparable injury under *Winter*, and the delay did not prejudice Defendants in any way. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1145 n.12 (9th Cir. 2013) ("[T]he government identifies no prejudice that it has suffered as a result of this delay, and in any event the district court did not abuse its discretion by declining to withhold preliminary relief from a constitutionally suspect government practice on the basis that an injunction should have been requested sooner").

Daniels, on the other hand, will incur approximately $60,000 per month in additional costs if it is unable to dispose of its waste in out-of-state facilities that purportedly violate the MWMA. *See* Kennedy Decl. ¶ 13.

In sum, the *Winter* factors weigh overwhelmingly in favor of granting a preliminary injunction. The Court therefore GRANTS Daniels's motion for a preliminary injunction.

## V. CONCLUSION

For the foregoing reasons, the Court ORDERS that:

1. Defendants' motion to dismiss (Doc. 12) is DENIED;
2. Daniels's motion for a preliminary injunction (Doc. 11) is GRANTED;
3. Defendants are RESTRAINED AND ENJOINED from enforcing the MWMA against Daniels's out-of-state waste disposal; and
4. The parties shall submit a joint status report on or before June 23, 2017, informing the Court how they wish to proceed.

IT IS SO ORDERED.

Dated: **June 13, 2017**       **/s/ Lawrence J. O'Neill**
UNITED STATES CHIEF DISTRICT JUDGE